# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| HARRY COLLINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:11-CV-392 (CAR) |
| CITY OF MACON, SHANE SMITH, | : | |
| and CHIEF MIKE BURNS, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of Macon, Georgia (the "City"), Officer Shane Smith, and Chief of Police Mike Burns (collectively, "Defendants") move this Court for summary judgment as to Plaintiff Harry Collins' civil rights action pursuant to 42 U.S.C. § 1983 and Georgia tort law. Having considered the relevant facts, applicable law, and the parties' arguments, Defendants' Motion for Summary Judgment [Doc. 25] is **GRANTED in part** and **DENIED in part**. Defendants' Motion is **GRANTED** with respect to Plaintiff's § 1983 claims against Defendants City of Macon, Georgia; Chief Mike Burns; and Officer Shane Smith in his official capacity. However, Defendants' Motion is **DENIED** with respect to Plaintiff's § 1983, battery, and punitive damages claims against Defendant Officer Shane Smith in his individual capacity.

## LEGAL STANDARD

1

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitles it to a judgment as a matter of law.[2] If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[3]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[4] "The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than 'some metaphysical doubt as to the material facts.'"[5] In cases where opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Catrett*, 477 U.S. at 323 (internal quotation marks omitted).
[3] *See* Fed. R. Civ. P. 56(e); *see also Catrett,* 477 U.S. at 324-26.
[4] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

not adopt that version of the facts."[6] A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[7] "The court may not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[8]

## BACKGROUND

On Saturday, October 9, 2009, Officer Shane Smith of the Macon Police Department arrested Plaintiff Harry Collins at his home for criminal trespass. The instant action involves the force used by Officer Smith immediately after detaining Plaintiff. The facts in the light most favorable to Plaintiff are as follows.

On October 9, 2009, Plaintiff returned home after consuming four twelve-ounce Budweiser beers earlier that afternoon.[9] Laura Collins, Plaintiff's wife, who was at home with their children, smelled alcohol on Plaintiff's breath and asked him to leave because she did not want the kids to be around his "state of drunkenness."[10] Plaintiff refused and began to argue with Laura.[11] Fearing their argument would escalate into a

---

[6] *Pourmoghani-Esfahani v. Gee*, 625 F.2d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380) (2007)).
[7] *Id*. (internal quotation marks omitted).
[8] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[9] Pl. Dep. 33 [Docs. 25-3 & 25-4].
[10] L. Collins Dep. 16:14-21 [Doc. 25-5]. At the time of the instant action, Plaintiff was suffering from alcoholism, bipolar disorder, schizophrenia, psychosis, and depression. Pl. Dep. 33:4, 40:23-25, 41:5-10, 43:1, 39:14-17. According to Plaintiff, these conditions were untreated to a "certain degree" in that he was not taking any medication. *Id.* at 46: 13-16.
[11] *Id*. at 34-35, L. Collins Dep. 20-23.

3

physical altercation,[12] Laura called the police, and Officer Shane Smith was dispatched to Plaintiff's home.[13] When Officer Smith arrived, Laura explained that Plaintiff had been drinking and that she wanted Plaintiff to leave, either on his own, or, if necessary, with police assistance.[14] Plaintiff left without objection shortly thereafter, leaving his keys and money at the house, and Laura and the children went to a friend's house for the remainder of the day.[15]

That evening when Laura returned with the children, she saw Plaintiff walking toward their house and noticed that their front door had been kicked in.[16] Plaintiff told Laura that he kicked in the front door and went inside the house to lie down in the bedroom.[17] Laura called the police, stating that Plaintiff returned and kicked in the front door, and that she was "fearful."[18] Again Officer Smith was dispatched to Plaintiff's home.[19] When he arrived, Officer Smith arrested Plaintiff in the bedroom for criminal trespass.[20] Officer Smith handcuffed Plaintiff's hands behind his back and

---

[12] This was, unfortunately, familiar territory for Plaintiff and his wife. The record reflects that in 2004, 2008, and earlier that year in 2009, Plaintiff was charged with several incidents of domestic violence. L. Collins Dep. 19:11-15.
[13] Smith Aff. ¶ 6 [Doc. 25-6].
[14] Pl. Dep. 49, L. Collins Dep. 16.
[15] Pl. Dep. 49:25; L. Collins Dep. 22:4-11.
[16] L. Collins Dep. 26:19-25, 27
[17] Pl. Dep. 54. In his deposition, Plaintiff testified that he did not kick in the door, explaining that he lied to Laura because he did not want to her to "panic" at the thought of a break-in. *Id.* at 54:14.
[18] Smith Aff. ¶ 8.
[19] *Id*.
[20] Pl. Dep. 58:17, Smith Aff. ¶ 9; s*ee* O.C.G.A. § 16-7-21.

4

walked Plaintiff out of the bedroom, through the living room, and out the front door.[21] There is no evidence that Plaintiff resisted or otherwise objected to the arrest.

What happened next is disputed. According to Plaintiff, they walked "a little bit up the driveway, and bam," Officer Smith pushed Plaintiff and "slammed" or "pile-drived" him to the ground, causing Plaintiff's right side of his face to hit the concrete.[22] Plaintiff neither resisted Officer Smith nor attempt to flee at any point during this incident.[23] On the contrary, Officer Smith testified that Plaintiff "struggled and made movements that made [him] believe that [Plaintiff] was attempting to escape custody" and that he "brought Plaintiff to the ground…to subdue him."[24] Reading the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff was neither resisting arrest nor moving in such a manner that would indicate he was trying to flee.

After Officer Smith helped Plaintiff off the driveway, he placed Plaintiff in the back seat of the squad car.[25] An unnamed second officer, who was in the car during the arrest, went to Plaintiff's house to ask Laura for a towel.[26] Laura, who did not see any of the events outside, assumed Plaintiff had vomited and gave the officer a clean

---

[21] Smith Aff. ¶ 8, Pl. Dep. 56:22-24, 57:13-16.
[22] Pl. Dep. 79, 51:9, 65:23.
[23] *Id*. at 59:8-11.
[24] Smith Aff. ¶¶ 10, 11.
[25] Pl. Dep. 80:12-14.
[26] *Id*. at 80:16-20; L. Collins Dep. 36:24-25.

5

towel.[27] When the officer offered Plaintiff the towel to clean his face, he refused, and the officer brought the unused towel back to Laura.[28]

The arresting officers then transported Plaintiff to the jail to be booked, but the booking officers refused to book him because of his injuries and told Officer Smith to take him to the hospital.[29] Because of the apparent severity of Plaintiff's laceration on or around his right eye, Plaintiff apparently did not need to say what was wrong with his eye at the hospital;[30] the staff treated Plaintiff's eye and took x-rays of his upper back.[31] After the arrest, Plaintiff complained of blurred vision, numbness in his extremities, and severe pain in his upper back.[32] When he was released from jail a month later on November 12, an eye exam revealed that Plaintiff had 20/20 vision and that his injured right eye had better vision than his uninjured left one.[33] Plaintiff, apparently desiring a more in-depth examination, was referred to an eye specialist, although a second exam was foreclosed due to lack of insurance coverage.[34] Plaintiff

---

[27] L. Collins Dep. 38:20-24, 37:2-4.
[28] *Id.* at 39:13-15; Pl. Dep. 63:20-23.
[29] Pl. Dep. 63:24-25—64:1-3.
[30] *Id.* at 69:1-4. "Q: So did you tell them at the Medical Center, I got an eye problem? Something is wrong with my eye? Check it out? A: I didn't have to…. They seen it [sic]." *Id.*
[31] *Id.* at 67:22-23.
[32] *Id.* at 66-70.
[33] *Id.* at 73-75.
[34] *Id.* at 76-77.

6

also went to a chiropractor for the pain in his upper middle back where he received an adjustment of sorts, although "it really didn't help that much."[35]

On October 3, 2011, Plaintiff filed the instant civil rights action against the City, Officer Shane Smith in his individual and official capacities, and Macon Chief of Police Mike Burns in his official capacity. Plaintiff specifically alleges a 42 U.S.C. § 1983 excessive force claim in violation of the Fourth Amendment against Officer Smith in his individual and official capacities, and a state law battery claim against Officer Smith in his individual capacity. Plaintiff also alleges two vague § 1983 claims against the City for its unconstitutional custom, policy, or practice and its failure to train or supervise. Plaintiff requests compensatory damages in the amount of $500,000.00, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs. Defendants have filed the instant timely Motion for Summary Judgment challenging the merits of Plaintiff's claims, and, in the alternative, argue they are immune from suit.

## DISCUSSION

### I. Plaintiff's § 1983 Claims

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities

---

[35] *Id.* at 73:8-9. Although some evidence suggests Plaintiff's back pains may be pre-existing, the Court will assume that Plaintiff's back pains were caused by the instant injury for the purposes of this Motion.

7

secured by the Constitution and laws."[36] A plaintiff may bring a § 1983 claim against a person in his individual or official capacity, or against a governmental entity.[37] Plaintiff has sued Officer Smith in his individual and official capacities, Mike Burns in his official capacity, and the City of Macon. The Court begins with Plaintiff's claim against Officer Smith in his individual capacity.

A. Officer Shane Smith, Individual Capacity

Plaintiff alleges that Officer Smith used excessive force in violation of the Fourth Amendment. On summary judgment, Officer Smith disputes the merits of Plaintiff's claim and raises qualified immunity as his defense. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[38] In order to receive qualified immunity, the officer "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"[39] Once a defendant proves that he was performing a discretionary function, the burden shifts to the plaintiff to show that the defendant violated a constitutional right that was "clearly established" at the time.[40] In assessing the clearly-established prong, a court considers

---

[36] 42 U.S.C. § 1983.
[37] *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).
[38] *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (internal quotation marks omitted).
[39] *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).
[40] *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1329 (11th Cir. 2004).

"whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[41] Thus, in order for a plaintiff to show that a constitutional violation was clearly established, he must show (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary."[42]

As an initial matter, Plaintiff argues that Officer Smith was not acting in his discretionary authority. Specifically, Plaintiff contends that it is "not [Officer Smith's] duty to abuse an individual in his custody" and that such conduct "is outside the scope of his authority."[43] This argument is unavailing. Whether a government official acts within his discretionary authority turns not on the ministerial versus discretionary nature of an act, but rather on an evaluation of the official's duties and authority.[44] The Eleventh Circuit has held that "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority."[45] Here, it is undisputed that Officer Smith was an on-the-duty officer responding to Laura's 911 call and that

---

[41] *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (quotation omitted).
[42] *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (quotation omitted).
[43] [Doc. 28 at 6].
[44] *See Jordan v. Doe*, 38 F.3d 1559, 1565-66 (11th Cir. 1994).
[45] *Id.* (quoting *Rich*, 841 F.2d at 1564).

arresting Plaintiff was within the scope of Officer Smith's authority. Accordingly, the Court finds that Officer Smith was acting within the scope of his discretionary authority for the purposes of qualified immunity.

The Court next considers whether the facts viewed in the light most favorable to Plaintiff establish a violation of the Fourth Amendment. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."[46] The right to arrest an individual carries with it the right to "use some degree of physical coercion or threat thereof to effect it."[47] A "typical arrest involves some force and injury."[48]

In determining whether an officer's use of force is excessive, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."[49] The reasonableness of the use of force is measured objectively—that is, the use of force is "judgment from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[50] Whether the amount of force used by a police officer was proper depends on whether "a reasonable officer would believe that this level of force [was] necessary in the situation at hand."[51] To do this, a court must carefully balance "the nature and quality of the intrusion on the individual's

---

[46] *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).
[47] *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (quotation omitted).
[48] *Id.*
[49] *Vinyard*, 311 F.3d at 1347.
[50] *Graham v. Connor*, 490 U.S. 386, 397 (1989).
[51] *Ferraro*, 284 F.3d at 1197.

10

Fourth Amendment interests' against the countervailing governmental interests at stake."[52] When considering the need for the use of force, the court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[53]

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Officer Smith's use of force was objectively unreasonable. Plaintiff was arrested for criminal trespass, a misdemeanor, and importantly, Plaintiff was already detained and completely secured at the time the force was used.[54] There is no evidence that Plaintiff actively resisted or attempted to flee at any point during the arrest, including when Officer Smith used force against Plaintiff. Thus, the facts viewed in the light most favorable to Plaintiff clearly show that the force used by Officer Smith was unnecessary and disproportionate.[55]

---

[52] *Id.* at 1198-99 (quoting *Graham*, 490 U.S. at 396 (internal quotations omitted)).
[53] *Crenshaw*, 556 F.3d at 1290 (quoting *Graham*, 490 U.S. at 396).
[54] *Ferraro*, 284 F.3d at 1199-1200 ("Even more importantly, none of our other opinions granting qualified immunity have involved the infliction of such severe and disproportionate force after the arrest had been fully effected, the arrestee completely secured, and all danger vitiated.").
[55] *See Ferraro*, 284 F.3d at 1188 (finding excessive force where officers slammed plaintiff's head into trunk while plaintiff was handcuffed and not resisting); *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (finding excessive force where plaintiff was not resisting and officer twisted plaintiff's arms behind her back and over-tightened handcuffs).

Defendants argue that Officer Smith's actions constituted mere de minimus force. In support, Defendants cite two Eleventh Circuit cases, *Rodriguez v. Ferrell*[56] and *Woodruff v. City of Trussville*,[57] which held that de minimus force, by itself, does not support an excessive force claim. In those cases, the court concluded that twisting a suspect's arm behind his back to detain an arrestee[58] and putting a suspect face down on the ground with a knee in his back to secure the suspect while applying restraints[59] were acceptable means of detaining suspects under the Fourth Amendment. Notably, these cases consider the amount and type of force applied in detaining the suspect. In this case, however, Plaintiff's hands were handcuffed behind his back, and thus, he was already detained. The issue, therefore, is whether Plaintiff acted in such a way so as to lead a reasonable officer to believe he was resisting or attempting to escape custody. Because the record in the light most favorable to Plaintiff indicates that he was neither resisting nor attempting to flee, the Court must conclude that Officer Smith's decision to use such force against Plaintiff was excessive and unreasonable. Finally, to the extent Defendants discount Plaintiff's excessive force claim by arguing Plaintiff's injuries are minimal, this argument is equally unavailing.[60]

---

[56] 280 F.3d 1341 (11th Cir. 2002).
[57] 434 F. App'x 852 (11th Cir. 2011).
[58] *Rodriguez*, 280 F.3d at 1351.
[59] *Woodruff*, 434 F. App'x at 855.
[60] *See Ferraro*, 284 F.3d at 1200 ("[T]he fact that [plaintiff] did not suffer greater injury to her head as a result of it being slammed against the trunk of a car does not alone render the force used *de minimus*.").

12

Assuming that Officer Smith violated Plaintiff's Fourth Amendment right, as the Court must do in drawing all reasonable inferences in favor of Plaintiff, Officer Smith may nevertheless be entitled to qualified immunity if Plaintiff cannot establish that this constitutional right was clearly established at the time of the events giving rise to the litigation. Whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Georgia.[61] The relevant inquiry is "fact specific,"[62] and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts.[63]

The Eleventh Circuit held that it has "no difficulty finding that by September 2003, previous case law clearly established that officers may not use excessive force against a non-resisting suspect who has already been subdued."[64] Because the evidence read in the light most favorable to Plaintiff establishes that Officer Smith used excessive force against Plaintiff, who was handcuffed and neither resisting nor attempting to escape, Officer Smith is not entitled to qualified immunity. The law was

---

[61] *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1033 (11th Cir. 2001) (en banc).
[62] *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994).
[63] *Lassiter v. Ala. A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).
[64] *Reese v. Herbert*, 527 F.3d 1324, 1333-34 (11th Cir. 2008); *see also Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (concluding, even without case law on point, that the evidence, if credited, suggested "the officers used excessive force in beating [plaintiff] even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way").

clearly established at the time of the arrest that this sort of force was prohibited under the Fourth Amendment and that such force would lead to § 1983 liability. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment excessive force claim is **DENIED**.

B. The City

Plaintiff alleges two § 1983 claims against the City. First, Plaintiff alleges that the City engaged in unconstitutional policies, customs, or practices, and second, that the City inadequately trained or supervised its employees. The Court will consider each claim in turn.

Without much explanation, Plaintiff quotes three Macon Police Department policies that Officer Smith allegedly violated in his response: (1) "An employee shall not mistreat persons who are in their custody"; (2) "Employees shall handle such persons in accordance with law and department procedures"; and (3) "Employees will provide security and care for all persons coming into their custody, to ensure that there is no escape."[65] Simply asserting that Officer Smith violated Macon Police Department policy is insufficient to establish municipal liability.

"The Supreme Court has placed strict limitations on municipal liability under § 1983."[66] Unlike corporations or other employers, municipalities do not usually answer

---

[65] [Doc. 28 at 4-5].
[66] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

for the acts of their agents in tort.[67] But this rule has an exception: a municipality may incur liability for the actions of a police officer when it promulgates an "official policy" that causes a constitutional violation.[68] To assert a claim under § 1983 against a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."[69] This requires that a plaintiff allege either direct or inferential facts "respecting all the material elements necessary to sustain a recovery under some viable legal theory."[70] Additionally, a policy or custom that would create municipal liability can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and "so permanent and well settled as to constitute a custom or use with the force of law."[71]

Here, Plaintiff has established, at most, that Officer Smith violated Plaintiff's constitutional rights. Importantly, however, the cited Macon Police Department policies are constitutional and there is no evidence that would suggest the City has unconstitutional practices or customs. Moreover, Plaintiff has offered no evidence that the City's practice or custom caused Plaintiff's injuries. Accordingly, because Plaintiff

---

[67] *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).
[68] *See id.* at 694–94; *Gold*, 151 F.3d at 1350.
[69] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).
[70] *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010) (citation and internal punctuation omitted).
[71] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

15

has failed to produce evidence of the existence of a specific unconstitutional Macon Police Department policy or custom that caused Plaintiff's injuries, his § 1983 claim against the City fails as a matter of law. Defendants' Motion as to this claim is **GRANTED**.

Next, the Court considers Plaintiff's second claim against the City for its alleged inadequate training or supervision of its employees. Plaintiff argues that Officer Smith is equipped with weapons to use at his discretion and that he is "supposedly" trained on how to utilize the weapons safely.[72] Plaintiff hypothesizes that Officer Smith "was either inadequately trained as an officer, or he was improperly supervised by his superiors in an attempt to keep his anger issues managed."[73] These arguments are insufficient. Plaintiff's contentions amount to nothing more than raw speculation and cannot be used to support a finding of a genuine issue of material fact. Accordingly, Defendants' Motion as to this claim against the City is also **GRANTED**.

C. <u>Officer Smith & Chief Burns, Official Capacities</u>

Lastly, the Court considers Plaintiff's claim against Defendant Officer Smith and Chief Burns in their official capacities. "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [for which the official is an agent]."[74] Therefore, "the only immunities available to the defendant in an official-

---

[72] [Doc. 28 at 6].
[73] *Id.*
[74] *Ky. v. Graham*, 473 U.S. 159, 166 (1985).

16

capacity action are those that the governmental entity possesses."[75] A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[76]

Here, Plaintiff simply has insufficient evidence to maintain this action against either Officer Smith or Chief Burns in their official capacities. As an initial matter, a suit against both Defendants in their official capacities is merely duplicative of Plaintiff's claims against the City directly and therefore is entitled to dismissal on this ground. Notwithstanding, there is no evidence that there is a custom of routinely applying force to cooperative, detained arrestees. Nor is there evidence that Burns has so abrogated his function as the Chief of Police for the Macon Police Department that the conduct of his subordinates constitutes official City policy. Accordingly, to the extent Defendants' Motion pertains to Plaintiff's excessive force claim against Defendants Officer Smith and Chief Burns in their official capacities, the same is hereby **GRANTED**.

II. **State Law Claims**

A. <u>Battery</u>

---

[75] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).
[76] *Monell*, 436 U.S. at 694; *see Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) (municipal liability under § 1983 can only exist when the deprivation was undertaken pursuant to municipal policy or custom).

On summary judgment, Defendants argue that Officer Smith is entitled to official immunity as to Plaintiff's state law battery claim. Because Defendants do not challenge the merits of Plaintiff's claim, the Court will assume that this claim is viable and will instead focus its analysis on whether Officer Smith is entitled to official immunity.

The Georgia Constitution confers official immunity to public officials sued in their individual capacities who are engaged in discretionary acts if the act was done without wilfulness, malice, or corruption.[77] Official immunity precludes hindsight review of an official's judgment and allows public employees to retain independence of action without fearing personal liability.[78] Actual malice, in the context of official immunity, is equated with "express malice or malice in fact" and requires a showing of "deliberate intention to do wrong."[79] Mere proof of ill will, anger, frustration, or irritation is insufficient to establish actual malice.[80] Rather, the plaintiff must show that the public officer acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm the plaintiff.[81]

---

[77] *Cameron v. Lang*, 274 Ga. 122, 123 (2001); GA. CONST. art. I, § II, para. IX(d).
[78] *Gilbert v. Richardson*, 264 Ga. 477, 750 (1994).
[79] *Adams v. Hazelwood*, 271 Ga. 414, 414–15 (1999); *see Merrow v. Hawkins*, 266 Ga. 390, 391 (1996).
[80] *Adams*, 271 Ga. at 415; *Woodward v. Gray*, 241 Ga. App. 847, 851 (2000), *overruled on other grounds by Stryker v. State*, 297 Ga. App. 493, 494 (2009).
[81] *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2002) (citing *Adams*, 271 Ga. at 415); *see Kidd v. Coates*, 271 Ga. 33, 33–34 (1999) (defining "actual intent to cause injury" as "an actual intent to cause harm to the plaintiff" encompasses concept of wilfulness, malice, or corruption in the context of official immunity).

As concluded above, Officer Smith was acting in his discretionary authority, and thus is entitled to official immunity if he did not act with actual malice. Viewing the facts in the light most favorable to Plaintiff, the Court concludes that if a jury were to believe Plaintiff's version of the facts, that is that he was neither resisting nor attempting to escape, a jury could reasonably conclude that Officer Smith's actions were carried out with the intent to harm Plaintiff. Consequently, Officer Smith is not entitled to official immunity with respect to Plaintiff's state law battery claim. Defendants' Motion with respect to this claim is **DENIED**.

B. Punitive Damages

In his Complaint, Plaintiff requests punitive damages against the City and Officer Smith. As the Court has already dismissed Plaintiff's claims against the City and against Officer Smith and Chief Burns in their official capacities, Plaintiff's request for punitive damages against these Defendants is likewise dismissed. Accordingly, Defendants' Motion is **GRANTED** with respect to Plaintiff's punitive damages claim against the City, and Chief Burns and Officer Smith in their official capacities.

The Court reaches a different conclusion, however, with respect to Plaintiff's claim for punitive damages against Officer Smith in his individual capacity. In § 1983 actions, punitive damages are available from government officials when they are sued in their individual capacities.[82] In order to obtain punitive damages against Officer

---

[82] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268-70 (1981).

Smith, Plaintiff must show that Officer Smith's conduct was "motivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected rights of others."[83] Here, the Court finds Officer Smith is not entitled to summary judgment on this claim. If the jury accepts Plaintiff's version of the facts, they could reasonably conclude Officer Smith was, at the very least, callously indifferent to Plaintiff's federally protected rights. Therefore, summary judgment in Officer Smith's favor as to to Plaintiff's claims for punitive damages is **DENIED**.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. 25] is **GRANTED in part** and **DENIED in part**. Defendants' Motion is **GRANTED** with respect to Plaintiff's § 1983 claims against Defendants City of Macon, Georgia, Chief Mike Burns, and Officer Shane Smith in his official capacity. However, Defendants' Motion is **DENIED** with respect to Plaintiff's § 1983, battery, and punitive damages claims against Defendant Officer Shane Smith in his individual capacity. Defendants City of Macon, Georgia and Chief Mike Burns are hereby **DISMISSED**.

**SO ORDERED,** this 17th day of April, 2013.

S/ C. Ashley Royal  
C. ASHLEY ROYAL  
UNITED STATES DISTRICT JUDGE

LMH/jll

---

[83] *Smith v. Wade*, 461 U.S. 30, 56 (1983).